**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF WISCONSIN**

---

Rosalind Cich
W4381 County Rd. A
Freedonia, WI 53021 Case No.:
Plaintiff

Vs.

Credit Associates, LLC
5050 Quorum Drive, Suite 700
Dallas, TX 75254

And

Global Holdings, LLC
f/k/a Global Client Solutions, LLC
15 W. 6th Street, Ste. 1600
Tulsa, OK 74119

And

Steven Petrevski
52 Krysch Ln
Wyckoff, NJ 07481

And

Jane Doe 1

---

## COMPLAINT

NOW COMES Plaintiff, Rosalind Cich, by and through her attorney, Angel Rose Kwaterski of Legal Action of Wisconsin, Inc., and alleges as follows a Complaint against all Defendants.

## INTRODUCTION

This case involves an illegal and deceptive debt settlement and credit repair scam perpetrated by Defendants, including an unregistered debt settlement company, its employees, and

its attorney network who swindled the plaintiff through telemarketing fraud. Defendants violated numerous federal and statute statutes, regulations, and codes, including without limitation, the federal Credit Repair Organization Act, the federal Telemarketing Sales Act, the Wisconsin Consumer Act, Wisconsin's Direct Marketing Act, and statutes enacted to prevent fraud on elderly and vulnerable persons.

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, the Credit Repair Organization Act ("CROA"), 15 U.S.C. 1679, et seq.; 15 U.S.C. § 1681 et seq., the Fair Credit Reporting Act; and 15 U.S.C. § 6102, the Telemarketing Sales Act.
2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the federal law claims pursuant to 28 U.S.C. § 1367.

## VENUE

3. The transactions and occurrences giving rise to this action occurred in the City of Freedonia, County of Ozaukee, State of Wisconsin.
4. Venue is proper in the Eastern District of Wisconsin.

## PARTIES

5. Plaintiff, Rosalind Cich, is a 61-year-old natural person and a citizen of Wisconsin residing at W4381 County Rd. A, Fredonia, Wisconsin.
6. Defendant Credit Associates, LLC ("Credit Associates") is a Delaware credit repair organization and debt management provider with a principal place of business located at 5050 Quorum Drive, Dallas, Texas.

7. At all times relevant, Credit Associates was engaged in the business of providing debt adjustment or debt settlement services to consumers, including allegedly negotiating with creditors on behalf of consumers owing consumer debts in order to reduce or settle debt.
8. Defendant Credit Associates is a "person" as defined by 47 U.S.C. § 153(39).
9. Upon information and belief, Jane Does 1is an employee or agent of Credit Associates who acted in concert, using fraud, deceptive acts and practices and material misrepresentations to swindle Ms. Cich out of money using a debt settlement and credit repair scam.
10. Doe 1, whose address is unknown is a natural person who telephoned Ms. Cich, identifying herself as "Ashley Varela" on or around October 7, 2024, and signed the Contract at issue on behalf of Credit Associates.
11. Defendants acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.
12. Defendant Global Holdings LLC, ("Global") f/k/a Global Client Solutions, LLC. is an Oklahoma limited liability corporation with a principal place of business located at 15 W. 6th Street, Suite 1600, Tulsa, Oklahoma. Global provided the dedicated account that Credit Associates used to hold and distribute Ms. Cich's funds.
13. Defendant Steven Petrevski is and was, at all relevant times, the CEO and President of Global and the Treasurer of ACDR. Upon information and belief, his home address is located at 52 Krysch Lane, Wyckoff, New Jersey.
14. At all times relevant, Global was engaged in the business of money transmission in Wisconsin.

15. Unless otherwise indicated, the use of any Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that defendant named.

## FACTUAL ALLEGATIONS SUPPORTING CAUSES OF ACTION

Credit Associates Background and Relationship with Co-Defendants

16. Defendant Credit Associates is a professional debt settlement organization that was formed in 2015 under the laws of Delaware.[1]

17. At all relevant times, Credit Associates held itself out, and was engaged, as a business that provides debt settlement and relief services.

18. Credit Associates has solicited consumers in Wisconsin, including Ms. Cich and other consumers in Wisconsin, through advertising, including numerous Internet websites. See, for example, the company website at www.creditassociates.com, where the company advertises several services, including debt counseling, debt management, debt consolidation and debt settlement  and claims "The CreditAssociates team has decades of experience providing trusted debt relief services to help clients overcome unsecured debt and regain financial stability." [2]

19. Credit Associates' website states, on its home page, "Services not available in all states, including New Jersey. Where applicable, Credit Associates will refer you to an accredited service provider who can provide debt relief services you need."

20. Credit Associates self-described activities, if successful, necessarily result in credit repair, since a settled debt would reduce the consumer's debt-to-credit ration (utilization), increase

[1] See Cich 0001 and 0002

[2] CreditAssociates - Debt Relief And Settlement Services

the consumer's credit score, and would appear on a credit report as paid, partly paid, or settled.

21. Credit Associates program was not a bona fide credit counseling service.

22. Defendant Global was formed in 2003 under the laws of Oklahoma.[3]

23. Defendant Global provides its services to debt settlement companies, including Credit Associates, via a servicing agreement, agreeing to provide software for tracking and monitoring custodial accounts on behalf of consumers that purchase debt settlement company's services.

24. Global operates as a third-party custodian that holds the debt settlement services company's client's funds at an insured financial institution for the purposes of paying the debt settlement services company's fees and for making payments to creditors or debt collectors in connection with renegotiation, settlement, reduction or other alteration of the terms of payment or through the terms of a debt.

25. Global holds the funds until it receives confirmation that a debt has been settled on behalf of the debt settlement service company's client.

26. Global releases the authorized amount of funds to the debt settlement services company' client's credit as well as the appropriate amount of fees due to the debt settlement company.

27. Global has maintained arrangements with several entities that contract with Wisconsin consumers to provide debt settlement services.

28. Global has also maintained or entered into contracts with Wisconsin consumers to perform services which include:

    a. Collecting of funds via ACH from the consumer's designated financial institutions;

[3] See Cich 0003

b. Depositing such funds in custodial accounts;

c. Disbursing funds from the custodial accounts to the consumer's creditors;

d. Disbursing fees to the consumer's designated company;

e. Disbursing funds to third parties based on instructions received from the consumer and/or their designated company;

f. Accepting and acting upon deposit, transfer, and/or payment instructions received from the consumer's designated company; and

g. Executing the consumer's payment instructions in a commercially reasonable manner.

29. Upon information and belief, at all relevant times, Defendant Steven Petrevski is the CEO, and President of Global and the Treasurer of ACDR. [4]

<u>State and Federal Enforcement Actions Against Defendants</u>

*A. State of Hampshire Banking Department - Re: In the Matter of Global Client Solutions, LLC*

30. On or about December 15, 2015, Global entered into a Consent Order with the New Hampshire Department of Banking. The order settled allegations that Global was[5]:

a. Global processed dedicated accounts for New Hampshire Consumers without a New Hampshire money transmitter license;

b. Global entered into contracts with New Hampshire Consumers, who were also contracted with debt settlement companies to negotiate settlements on their behalf. Global Client administered the dedicated accounts of consumers whose funds were used for their debt settlement programs;

c. Collected at least $690,084.85 in fees.

[4] See Cich 0004

[5] See Cich 0005

31. Under the terms of the Consent Order, Global was ordered to be licensed by the Department as a Money Transmitter.

*B. State of Kansas Office of the State Bank Commissioner In re: Global Client Solutions*

32. On or about April 19, 2017, Global entered into a Consent Order with the State of Kansas State Bank Commissioner. A true and accurate copy of the Consent Orders are attached.[6]

33. The Order found that at no point prior to the issuance of the Consent Order was Global licensed as a money transmitter in Kansas, nor did Global obtain license approval from Kansas prior to accepting assignment of business from another entity.

34. The Order also found that after accepting the assignment of business from Trans2Pay, LLC, Global engaged in at least 925 transactions with a volume of $458,260.35 between January 1, 2016, and May 31, 2016.

35. The Commissioner found, as a conclusion of law, that Global violated K.S.A. 9-509(a) by failing to submit an application with and obtain a license from the commissioner prior to engaging in money transmission with residents of the state of Kansas.

*C. CFPB v. Global Client Solutions, LLC et al*

36. Global has previously agreed to a Stipulated Final Judgment and Consent Order in settlement of claims brought against it by the Consumer Financial Protection Bureau for violation of the Telemarketing and Consumer Fraud Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended and implemented by the Telemarketing Sales Rule, 16, CFR Part 310 (TSR).[7]

37. The Consent Order enjoined Global from providing substantial assistance to debt relief service providers such as Credit Associates, including by providing account maintenance

---

[6] See Cich 0006
[7] See Cich 0007

services or payment processing, when Global knows or consciously avoids knowing that the provider is requesting or receiving unlawful advance fees or is engaged in any other act or practice that violates the TSR.

38. The Consent Order requires Global to screen prospective debt relief service providers such as Credit Assistance, and screen and monitor current debt relief service providers by, amount other things, obtaining from each, a list of all trade names and fictitious names and phone numbers, marketing materials, and information about who has ownership interests in the provider.

39. The Consent Order requires Global to obtain the names of attorneys claiming to provide debt relief services and the states in which they are licensed to practice.

40. The Consent Order requires Global to create, for three years from the Effective Date of August 27, 2014, records necessary to demonstrate compliance with the Consent Order and to retain them for five years.

*D. Commonwealth of Pennsylvania Department of Banking and Securities, Compliance Office v. Credit Associates, LLC*

41. On or about April 14, 2025, Credit Associates entered into a Consent Agreement and Order with the Commonwealth of Pennsylvania's Department of Banking and Securities, Compliance Office. [8]

42. The Order found that from in or around January 1, 2025, through August 21, 2023, Credit associates marketed, solicited, and/or offered to provide debt settlement services for a fee or other consideration to an individual who resides in Pennsylvania without obtaining a license from the Department, in violation of Section 301 (a) of the DSSA, 63 P.S. 2521(a).

---

[8] See Cich 0008

Defendants' Business Practices in Wisconsin

43. At all relevant times, Defendants purposely availed themselves of the Wisconsin Marketplace and secured benefits of that marketplace by advertising and doing business in Wisconsin with Wisconsin consumers.

44. The State of Wisconsin Department of Financial Institutions ("DFI") regulates adjustment service companies and money transmitters operating in Wisconsin.

45. Money transmitters are required to be licensed and regulated pursuant to Wis. Stat. §217.02.

46. Global is a money transmitter under Wis. Stat. §217.02.

47. At all relevant times, Global was not licensed in the state of Wisconsin as a money transmitter.

48. Adjustment Service Companies are required to be licensed and regulated pursuant to Wis. Stat. § 218.02 and DFI-Bkg 73.

49. Under Wisconsin law, the term "adjustment service companies" includes credit counselors, debt management providers, debt settlement or debt relief services, and any others engaged in the business of negotiating payment reductions or extensions of debtors. Attached is a true and accurate copy of guidance issued by the Wisconsin DFI in 2020. [9]

50. At all relevant times, Credit Associates ang Global were members of the industry group, American Association for Debt Resolution (AADR), previously known as the American Fair Credit Council (AFCC).

---

[9] See Cich 0009

51. On or about May 1, 2025, the American Association for Debt Resolution and the Consumer Debt Relief Initiative merged to form the Association for Consumer Debt Relief. (ACDR).

52. Defendant Steven Petrevski, was, and at all relevant times, was a board member on behalf of Global for the industry group ACDR.

53. On or about July 17, 2023, the AFCC, on behalf of its member organizations, submitted a response to the Wisconsin DFI regarding the Statement of Scope to revise DFI-Bkg 73, a proposed rule to cap fees associated with debt resolution services.[10]

54. In that 2023 letter, the AFCC alleges that AFCC members are "today" serving "tens of thousands of Wisconsin customers."

55. On or about August 3, 2023, the Wisconsin DFI sent an email to the Chairman and Vice Chairman for AADR in response to the public comments submitted by the AFCC.[11]

56. In this letter, Wisconsin DFI reiterated the need for "adjustment service companies" to be licensed with the State of Wisconsin.

57. WI DFI also reiterated the numerous times in which DFI communicated with AADR and its members regarding such requirements, dating back to at least 2020.

58. WI DFI states that none of the AADR member organizations are licensed as adjustment service companies in Wisconsin.

59. At all times relevant, neither Credit Associates nor Global were licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. §218.02.

---

[10] See Cich 0010

[11] See Cich 0011

60. The conduct of Credit Associates was authorized, approved and/or ratified by one or more officers, directors or managers of Credit Associates who knew that Credit Associates was likely to conduct itself, and allowed it to act with conscious disregard of the rights of consumers.

61. The agent(s) or employee(s) of Credit Associates acted within the course and scope of such agency or employment and acted with the consent, permission and authorization of Credit Associate's officers, directors or managers.

62. Credit Associate's conduct included some or all of the following, among other things:

   d. Holding itself out to the public, including consumers such as Ms. Cich in Wisconsin, as providing services in the management of debts by affecting the adjustment, compromise, or discharge of any account, not or other indebtedness of its customers;

   e. Holding themselves out as experts in settling unsecured consumer debt for less than what is owed to a creditor;

   f. Holding themselves out as able to increase a consumer's credit score or rating;

   g. Directing business solicitations into the State of Wisconsin seeking participation in Credit Associate's debt programs;

   h. Contracting in Wisconsin with Wisconsin consumers for various services, including debt settlement or debt adjustment services; and

   i. Offering to perform and performing activities for Wisconsin consumers, including debt settlement services.

<u>The Agreement with Rosalind Cich</u>

63. In or around October 2024, Rosalind Cich resided alone.

64. Due to the increased cost of living, Ms. Cich was struggling financially and began having difficulty bringing down her total debt.

65. All Ms. Cich's debts were incurred for personal, family and household purposes.

66. In or around October 2024, Ms. Cich received form direct mail solicitation from Defendant which advertised debt relief services.

67. On or around October 7, 2024, Ms. Cich contacted the phone number listed on the advertisement to inquire further about services and spoke with a Credit Associates representative named "Ashley Varela."

68. Ms. Cich was told by Varela that Defendant Credit Associates could provide consumers like her a variety of services, all of which were designed to improve Ms. Cich's credit or otherwise result in the resolution of debts Ms. Cich enrolled in Defendant's program.

69. Credit Associates made a sales pitch to persuade Ms. Cich to enter into a contract with Credit Associates, which Credit Associates represented would reduce her credit card debt by entering into its debt settlement program and discussed options with her.

70. Defendant Varella and Credit Associates represented that if she followed the program and made regular deposits into a bank account which would be set up and dedicated for her debt settlement, Credit Associates would settle her debts for a greatly reduced amount.

71. Defendant represented, both explicitly and by implication, that its services would ultimately have a positive impact on Ms. Cich's credit score as it would be able to resolve obligations faster than if she was to do things on her own, and that its services would reestablish Ms. Cich's credit and provide her with a fresh financial start.

72. Credit Associates further repeatedly represented the efficacy of its services and its ability to achieve better results than its competitors.

73. Credit Associates gathered Ms. Cich's financial information, including her income and outstanding debts.

74. Credit Associates represented to her that the "program Details" and benefits of its services if Ms. Cich paid into the program every two weeks as follows:

    a. The total amount of her accounts enrolled in the program was: $20,848.00; and

    b. She would save an estimated $6,254.40 by paying on $ 14,593.60 on the $20,848 principal through the Credit Associates program.

75. Credit Associates represented that she would make bi-weekly payments of xxx to a required dedicated account.

76. Credit Associates did not disclose to Ms. Cich that the dedicated account was managed by a separate entity, Global.

77. Credit Associates did not disclose any fees associated with the debt relief program to Ms. Cich.

78. Credit Associates told Ms. Cich that they needed to have her signature to enroll in the program and told her that she had to sign the contract electronically.

79. Ms. Cich did not give prior affirmative consent to conduct business electronically.

80. In fact, Ms. Cich does not even own a computer.

81. As a result of Defendant's representations and solicitations, Ms. Cich was sent an email from Ms. Varela on or about to October 7, 2024, to electronically enter into the agreement.

82. Prior to sending Ms. Cich the electronic documents for review, Credit Associates did not have Ms. Cich demonstrate that she could utilize the electronic signature forum.

83. Ms. Varela did not review the entre contract with Ms. Cich and merely paraphrased what the contract allegedly said.

84. Ms. Varela did not verbally disclose the fees associated with the services to Ms. Cich when reviewing the agreement with her.

85. Ms. Varela did not verbally disclose that the agreements contained multiple, conflicting arbitration provisions.

86. Ms. Varela also did not explain to Ms. Cich that she would be required to waive certain statutory consumer protection rights in order to obtain the services.

87. The information contained in the enrollment quote was not reviewed for accuracy with Ms. Cich.

88. On or about Oct. 11, 2024, Ms. Cich relied on Ms. Varela's representations on behalf of Credit Associates representations and entered into a contract for debt settlement services.[12]

89. Credit Associates conditioned its agreement to provide services on Ms. Cich agreeing in advance to make payment by means of a preauthorized "electronic fund transfers" from her account with a financial institution as such terms are defined in the Electronic Funds Transfer Act, 15 U.S.C. 1693k.

90. Credit Associates did not disclose to Ms. Cich that she could choose to utilize her own savings plan.

91. Ms. Cich relied upon Credit Associates representations and entered into an agreement for designated account services with Global.[13]

92. On or about October 14, 2024, Ms. Cich was mailed a "welcome letter" that contained information regarding next steps.

93. Ms. Cich continued to receive systematic phone calls and dunning notices from creditors and debt collectors, despite Defendant's promise that the collections would cease.

---

[12] See Cich 0012
[13] See Cich 0013

94. Between October 21, 2024, and March 5, 2025, Ms. Cich made all her monthly payments which was to be used toward her enrolled debt balances that Credit Associates was to negotiate for her.

95. Between October 2024 and March 2025, Ms. Cich transferred approximately $1,791.00 to Credit Associates and Global for services related to a debt relief program.

96. Ms. Cich's debt problems did not resolve.

97. Exasperated with the lack of progress and harassment from creditors after several months of remitting payments, Ms. Cich finally disenrolled from Defendant's program in or around March 2025.

98. Defendants worked together to assist and further each others violations of the federal and state laws alleged in this complaint.

99. Defendants' acts and omission caused Ms. Cich to suffer damages as well as other financial loss, emotional distress, worry, grief, fear, loss of opportunity, loss of enjoyment of life and aggravation.

100. Despite the financial means provided to Defendants to pay debts, which were to be saved in a dedicated account, Ms. Cich's debts remain unsettled and unpaid.

101. Ms. Cich fully entrusted Defendants to fulfill their fiduciary promise and contractual obligations.

102. Ms. Cich found herself in a much worse financial position after enrolling in Defendants' services.

103. Defendants made a profit off of Ms. Cich's debt by deceiving Ms. Cich into a service in which she believed each of the debts listed in the contract would be negotiated.

104. Defendants exploited Ms. Cich for financial gain.

**<u>First Claim for Relief – Wisconsin Consumer Act Violations Wis. Stat. §422.502 and §422.504</u>**
**Against Credit Associates**

105. Ms. Cich realleges and incorporates by reference the allegations of the proceeding paragraphs.

106. At all relevant times, Credit Associates were merchants who, with respect to the extension of credit by others (Ms. Cich's creditors), offered to Ms. Cich to provide or perform services, or represented that they would provide or perform services, in return for the payment or for other valuable consideration which would ultimately improve Ms. Cich's credit record, credit history or credit rating.

107. At all relevant times, the Defendants regularly advertised, offered, supplied, or dealt in services, money or credit in a manner which directly or indirectly resulted in or is intended or designed to result in, lead to or induce a consumer transaction and thus were "merchants" within the meaning of the Wisconsin Consumer Act, under Wis. Stat. § 421.301(25).

108. Ms. Cich is a "Buyer" within the meaning of the meaning of the Wisconsin Consumer Act, under Wis. Stat. § 422.501(1).

109. Defendants, by their occupations, held themselves out as having knowledge or skill peculiar to such practices or to whom such knowledge or skill may be attributed by his or her employment as an agent, broker or other intermediary.

110. The Defendants were merchants who induced Ms. Cich to enter into a consumer transaction for the modification of her consumer credit debts and as such, these defendants' dealings with Ms. Cich were subject to the Wisconsin Consumer Act.

111. At all relevant times, the Defendants' acting alone or in concert with others, have advertised, marketed, distributed, or sold debt relief services to consumers in Wisconsin.

112. At all relevant times, Credit Associates was a merchant who, with respect to the extension of credit by others, sold, provided or performed, or represented Credit Associates would sell, provide or perform, in return for the payment of money, the services of: 1) improving a buyer's credit record, credit history or credit rating; or 2) arranging for or obtaining an extension of credit for a buyer; or 3) providing advice or assistance to a buyer regarding these alleged services.

113. Credit Associates is a "credit services organization" within the meaning of Wis. Stat. § 422.501(2).

114. Credit Associates is not, and all relevant times was not, licensed or registered in Wisconsin to perform services as a credit services organization under Wis. Stat. § 422.502.

115. Upon information and belief, Credit Associates failed to obtain a surety bond issued by a surety company admitted to do business in Wisconsin or an irrevocable letter of credit from a federally insured bank or savings and loan association located in Wisconsin.

116. Credit Associates failed to file a copy of a bond or letter of credit with the administrator of the Department of Financial Institutions or any other regulator in Wisconsin.

117. Defendants failed to provide Ms. Stadtherr with the information statement mandated by Wis. Stat. §422.504.

118. Defendants knew or should have known that these were statutory prerequisites of the State of Wisconsin that must be satisfied prior to conducting business in the state.

119. Defendant knowingly and willfully violated the Wisconsin Consumer Act and the Wisconsin DFI licensing requirements.

120. Defendants have a pattern and practice of ignoring state and federal regulations, including state licensing requirements.

121. All Defendants are jointly and severally liable to Ms. Cich for violations and penalty subject to the remedies in Wis. Stat. §425.305

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the Defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. §§ 425.302, 425.303, 425.304, 425.305 and 425.310;

d. A declaration that the Credit Associates contract is void and unenforceable;

e. A declaration that the contract with Global is void and unenforceable;

f. Reasonable attorney's fees and costs; and

g. Such other and further relief as this Court deems just and proper.

**Second Claim for Relief – Wisconsin Consumer Act Violations**
**Wis. Stat. § 422.503**
**Against All Defendants**

122. Ms. Cich realleges and incorporates all previous paragraphs herein.

123. Credit Associates made or used untrue or misleading representation s in the offer or sale of services of the credit services organization to Ms. Cich in violation of Wis. Stat § 422.503(1)(c).

124. The defendants engaged, directly or indirectly, in acts, practices, and a course of business that operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization, in violation of Wis. Stat. § 422.503(1)(c).

125. The representations made to Ms. Cich in violation of Wis. Stat. § 422.503(1)(c) include, but are not limited to:

a. The "Program Details," "program benefits," estimates, and representations Credit Associates made, orally and in writing about how Ms. Cich would benefit from their program;

b. That its program is superior to other services;

c. Deceptively claiming that they can save Ms. Cich substantial amounts of money through their debt relief services by lowering and/or eliminating debts;

d. misrepresenting that even if there is a temporary effect on Ms. Cich's credit by participating in Credit Associates' plan, Ms. Cich's credit and creditworthiness will be restored prospectively and will improve because of participating in the program;

e. misrepresenting and providing inconsistent written and oral information about the amount of time Ms. Cich would be in Credit Associates' program and the services that allegedly will be performed during that time;

c. using a contract containing deceptive, misleading, and legally invalid provisions and misrepresentations;

d. that Credit Associates was entitled to offer debt relief services in the state of Wisconsin in or around the ate they solicited business from Ms. Cich; and

e. that Credit Associates maintains the requisite surety bond or insurance to cover consumer claims as required.

126. Credit Associates intentionally, knowingly, and negligently represented the Credit Associates program to Ms. Cich for its own financial gain, without regard to the truth that its program would never work in this case.

127. Credit Associates intentionally, knowingly, and negligently misrepresented the Credit Associates program to Ms. Cich without regard to the harm and consequences that Ms. Cich would suffer.

128. As members of ACDR, Credit Associates and Global knew or should have known, that the Wisconsin DFI required companies such as Credit Associates and Global to be licensed and regulated prior to conducting business in the state of Wisconsin.

129. During Credit Associates' sales pitch to Ms. Cich, Ms. Cich was never informed that some of her creditors would refuse to negotiate her account as a matter of corporate policy.

130. Credit Associates knew, but did not disclose, that most, if not all, the consumers using its services would be sued for debts.

131. Ms. Cich would never have entered into the contracts had she known that neither Credit Associates nor Global were licensed to do business in the state of Wisconsin.

132. Ms. Cich reposed trust and confidence in the defendants based on the advertisements, claims and statements made to her.

133. The Defendants' acts and omissions in dealing with Ms. Cich were intentional and were not because of a mistake or misunderstanding.

134. The Defendants intentionally disregarded the rights of Ms. Cich.

135. The Defendants knew or should have known that they were engaging in deceptive, abusive, and illegal activities in Wisconsin.

136. Upon information and belief, the Defendants routinely, frequently, and persistently violate the federal and state laws complained of herein with other consumers.

137. Credit Associates entire business model, in which it regularly acts in concert with Global is compromised of deceptive and illegal telemarketing during which they routinely and

repeatedly engage in the following unlawful and deceptive acts and practices, as the did with Ms. Cich:

a. Deceptively claiming and misrepresenting that Credit Associates was lawfully allowed to engage in debt relief and debt settlement services in the state of Wisconsin;

b. Misrepresenting Credit Associates ability to collect or receive fees or other forms of compensation from Wisconsin consumers;

c. Deceptively claiming that they can save consumers substantial amounts of money through their debt relief services by lowering and/or eliminating debts;

d. Misrepresenting that even if there is a temporary effect on the consumer's credit by participating in Credit Associates' plan, the consumers' credit and creditworthiness will be restored prospectively and will improve because of participating in the program;

e. Misrepresenting and providing inconsistent written and oral information about the amount of time Ms. Cich would be in Credit Associates program and the services that allegedly will be performed during that time;

f. Using a contract containing deceptive, misleading, and legally invalid provisions and misrepresentations;

g. Illegally charging advance payments before services are performed; and

h. Failing to provide statutorily compliant right to cancel the contract in violation of Wisconsin law.

138. Ms. Cich suffered actual damages as a result of the untrue, deceptive and misleading representations and statements made by Credit Associates and Finxera, to her including:

i. Severe damage to credit;

j. Denial of credit;

k. Loss of personal finances to pay for fraudulent debt settlement services;

l. Loss of interest on deposits made to Ms. Cich's account with Global;

m. Stress, frustration, anger, loss of sleep, anxiety, changes in mood, and sadness;

n. Loss of trust for financial services;

o. Increased balances due to creditors; and

p. Attorney's fees

139. Defendants are jointly and severally liable to Ms. Cich for violations and penalty is subject to remedies in Wis. Stat. § 425.305.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the all defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. § 425.305 and 425.310;

d. A declaration that the Credit Associates contract is void and unenforceable;

e. A declaration that the contract with Global is void and unenforceable;

f. Reasonable attorney's fee and costs; and

g. Such other and further relief as this Court deems just and proper.

**<u>Third Claim for Relief – Wisconsin Consumer Act Violation</u>**
**Wis. Stat. 421 and 422– Contract Violations**
**Against All Defendants**

140. Ms. Cich realleges and incorporates by reference the allegations of the preceding paragraphs.

141. Defendants Credit Associate and Global failed to provide Ms. Cich with a written informational statement including the information required in Wis. Stat. §422.504.

142. Ms. Cich did not consent to conduct business with the Defendants electronically.

143. Defendant Credit Associates failed to provide Ms. Cich with a contract compliant with Wis Stat §422.505 for its services.

144. Defendant Credit Associates and Global illegally attempted to waive Ms. Cich's rights under Wisconsin's Credit Services Organizations Act, including the right to a jury trial, which violated Wis. Stat. §422.506.

145. Defendants Credit Associates and Global illegal violated Ms. Cich's rights under the Wisconsin Consumer Act, by including a Choice of Law clause that selects the State of Texas regarding any litigation about the contract in violation of Wis. Stat. § 421.201(10).

146. Moreover, under Wis. Stat. §421.201(10), the choice of law provision, consent to foreign jurisdiction, and forum selection clauses in the Credit Associates contract were invalid.

147. Defendants' Credit Associates and Global' s attempts to waive Ms. Cich's rights under the Wisconsin Consumer Act, including Wis. Stat. §422.501, are void and unenforceable.

148. Defendants xxx are liable to Ms. Cich for knowingly and willfully directing Credit Associate and Global to engage in debt settlement services in Wisconsin without complying with Wisconsin statutes regarding contract formation.

149. Ms. Cich suffered damages as stated above due to Defendants' illegal actions.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the all defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. § 425.305 and 425.310;

d. A declaration that the Credit Associates contract is void and unenforceable;

e. A declaration that the contract with Global is void and unenforceable;

f. Reasonable attorney's fee and costs; and

g. Such other and further relief as this Court deems just and proper.

**Fourth Claim for Relief – Wisconsin Consumer Act Violation**
**Wis. Stat. § 421.108 – Breach of Obligation of Good Faith and Fair Dealing**
**Against All Defendants**

150. Ms. Cich realleges and incorporates by reference the allegations of the preceding paragraphs.

151. Wis Stat. §421.108 imposes an obligation of good faith in the performance and enforcement of all duties outlined in the Wisconsin Consumer Act, including contract formation, disclosure requirements and representations made to consumers.

152. Defendant Credit Associates breached this obligation by knowingly and willingly taking unfair advantage of Ms. Cich by:

a. Offering Ms. Cich services they knew or should have known they were unlikely to be able to provide;

b. Entering into a contract for services with Ms. Cich when they were not legally allowed to do so without obtaining the proper licensing and bond prerequisites;

c. Failing to disclose to Ms. Cich that they were not licensed in the State of Wisconsin to provide such services; and

d. Inserting an illegal choice of law provision in violation of Wis. Stat. §421.201(10).

153. Credit Associates did not observe commercially reasonable standards of fair dealing when they persistently failed to comply with state and federal regulations and when they misrepresented the terms of the contract to Ms. Cich.

154. Credit Associates breached the obligation of good faith and far dealing and is liable to Ms. Cich for this conduct.

155. They are liable to Ms. Cich for violating Wis Stat. §421.108.

156. Global breached the obligation of good faith and fear dealing owed to Ms. Cich by doing the following:

a. Offering Ms. Cich services they knew or should have known they were unlikely to be able to provide;

b. Entering into a contract for services with Ms. Cich when they were not legally allowed to do so without obtaining the proper licensing; and

c. Failing to disclose to Ms. Cich that they were not licensed in the State of Wisconsin to provide such services.

157. Global failed to observe reasonable commercial standards of fair dealing when they persistently failed to comply with state and federal regulations.

158. Global is liable to Ms. Cich for violating Wis. Stat. §42.1.108.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the all defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. §§ 425.302, 425.303, 425.304, 425.305 and 425.310.

d. A declaration that the Credit Associates contract is void and unenforceable;

e. A declaration that the contract with Global is void and unenforceable;

f. Reasonable attorney's fee and costs; and

g. Such other and further relief as this Court deems just and proper.

**Fifth Claim for Relief – Conspiracy to violate Ms. Cich's Rights**
**Against All Defendants**

159. Ms. Cich realleges and incorporates all previous paragraphs.

160. Credit Associates and Global acted in concert to unlawfully influence Ms. Cich to enter into a contract for their services for their own monetary gain.

161. Credit Associates and Global operated a common scheme against consumers, and Ms. Cich, by Credit Associates having consumers enter into a contract with Global to hold the settlement funds associated with Credit Associates program.

162. Defendants collected a monthly service fee for holding Ms. Cich's settlement funds.

163. The defendants collected fees from Ms. Cich that they were legally not entitled to charge.

164. The contracts with the Defendants were illegal, being for services that the Defendants could not provide. An illegal contract is void ab initio.

165. As a result of the defendants, Ms. Cich suffered actual damages as outlined previously.

**Sixth Claim for Relief – Violations of Wis. Stat. § 100.18**
**(Against all defendants)**

166. Ms. Cich realleges and incorporates by reference the allegations of the preceding paragraphs.

167. Defendants made untrue, deceptive, and misleading representations and statements in violation of Wis. Stat. § 100.18 to sell their services to Ms. Cich.

168. Ms. Cich suffered pecuniary losses as a result of the untrue, deceptive, and misleading representations made by Credit Associates.

**WHEREFORE**, Plaintiff prays that this Court enter Judgment in her favor and against all Defendants for the following:

a. Actual damages for her pecuniary loss;

b. Punitive damages;

c. Reasonable attorney's fees and costs; and

d. Such other and further relief as this Court deems just and proper.

**Seventh Claim for Relief – Violations of the Credit Repair Organization Act**

169. Ms. Cich realleges and incorporates by reference the allegations of the preceding paragraphs.

170. Congress passed the Credit Repair Organization Act ("CROA") at 15 U.S.C. §1679 et seq. to protect consumers from unscrupulous credit repair organizations.

171. Ms. Cich is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA because she is an individual who sought and obtained credit repair services.

172. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair

organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

173. Credit Associates is a "credit repair organization" as defined by §1679a(3) of the CROA, as they are people using any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

174. All defendants, including all individual defendants in this lawsuit, provided advice or assistance using an instrumentality of interstate commerce (telephone, email and/or mail) to sell, provide, or perform (or represent that such person could or would sell, provide, or perform) services to Plaintiff, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving her credit record, credit history, or credit rating.

175. Defendants violated the above-referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services provided Ms. Cich in violation of 15 U.S.C. § 1679b(a)(3).

176. All defendants in this case worked in concert and assisted other defendants in this case to make untrue or misleading representations of the services of the credit repair organizations to Ms. Cich in violation of 15 U.S.C. § 1679b(a)(3).

177. Defendants misrepresented the effectiveness of their services by promising substantial reductions in debt and improvement in credit scores within specific timeframes.

178. Ms. Cich relied on Defendants' misrepresentations to her detriment, as she was charged monthly fees for services that were not rendered.

179. Defendants' numerous misrepresentations to Ms. Cich, individually and in concert, made to induce her to sign the Contracts, violated their joint and respective obligations under CROA.

180. All defendants in this case engaged, directly or indirectly, in acts, practices, or through a course of business that constituted or resulted in the commission of, or attempted to commit, a fraud or deception on Ms. Cich in connection with the offer or sale of the services of their credit repair organizations in violation of 15 U.S.C. § 1679b(a)(4).

181. Defendants violated §§1679b(a)(3) and (4) inter alia, (1)by failing to be licensed to conduct business in the state of Wisconsin; (2) by failing to pay Ms. Cich's creditors with funds that she paid into the debt settlement program; (3) failing to provide debt settlement services that it was contractually obligated to provide; (4) failing to promptly communicate with Ms. Cich's creditors in an effort to resolve her debts; (5) failing to resolve her debts or improve her credit score; and (6) putting its financial interests ahead of Ms. Cich's interest.

182. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

183. Defendants violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendants charged and received money in exchange for services without fully performing those services, in violation of the CROA.

184. The CROA, 15 U.S.C. § 1679f provides that any contract not in compliance with the statute shall be treated as void and may not be enforced in any federal or state court or any other person.

185. As alleged above, Ms. Cich was harmed by Defendants' conduct.

**WHEREFORE**, Plaintiff prays that this Court grant her relief against all defendants jointly and severally for:

a. Actual damages, including emotional, financial, and consequential damages;
b. Punitive damages pursuant to 15 U.S.C. § 1679g;
c. Costs and reasonable attorney's fees;
d. Declaratory and injunctive relief declaring the contracts to be void; and
e. Such other and further relief as this Court deems just and proper

**Eighth Claim for Relief – 15 U.S.C. 1681 et eq.**
**Fair Credit Reporting Act**

186. Ms. Cich realleges and incorporates all previous paragraphs herein.

187. Defendants are "persons" as that term is defined in 15 U.S.C. 1681a(b).

188. The Fair Credit Reporting Act ("FCRA") establishes very specific rules placing limitations upon an entity (or "person") seeking to obtain a consumer's credit history or the content of a consumer's credit file, as follows:

> (f) Certain use or obtaining of information prohibited.—A person shall not use or obtain a consumer report for any purpose unless—

1. the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

2. the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

189. Section § 1681b(a)(3) of the FCRA lists the all-inclusive purposes for which a consumer report can be obtained, as follows:

(a) In General.— . . . [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

* * *

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

* * *

(F) otherwise has a legitimate business need for the information—(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

190. Upon information and belief, before Credit Associates had sent an advertisement in the mail to Ms. Cich, it had obtained, reviewed, and/or used Ms. Cich's consumer reports directly or through a third party.

191. Ms. Cich did not initiate any business transactions with any of the defendants prior to defendants accessing and using her credit reports.

**<u>Ninth Claim for Relief – Wis. Stat. § 100.20</u>**
**Unfair, Deceptive Trade Practices by failing to comply with State and Federal regulations Against All Defendants**

192. Ms. Cich realleges and incorporates all previous paragraphs herein.

193. Congress has authorized the Federal Trade Commission ("FTC") to regulate the conduct of telemarketers who sell goods or services pursuant to a telemarketing plan under the 15 U.S.C. § 6102 et. seq., the Telemarketing and Consumer Fraud and Abuse Prevention Act and the Telemarketing Sales Rule (TSR).

194. In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

195. The FTC has promulgated the TSR at 16 C.F.R. § 310 et. Seq.

196. Pursuant to 16 C.F.R. §310.6(b)(5)(i), TSR applies to the debt relief services and the sellers who advertise those services when the consumer responds by telephone to that advertisement.

197. At all relevant times, Ms. Cich was a "customer" as defined in 16 C.F.R. 310.2(n). She is also a "person" as defined at 16 C.F.R. 310.2(y).

198. At all relevant times, the business activities of Defendants constituted a "debt relief service" as defined in 16 C.F.R 310.2(o) which is defined as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

199. At all times material, Defendants Credit Associates were "seller(s)" with respect to debt relief services offered to Ms. Cich as said term is defined under 16 C.F.R. §310.2(aa).

200. Defendants Credit Associates have violated the TSR with respect to its services to Ms. Cich in the following ways:

a. by requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i); and

b. by misrepresenting any debt relief service provided by Defendants in violation of 16 C.F.R. §310.3(a)(2)(x).

201. Defendants have maintained a practice and pattern of telemarketing which violates the TSR.

202. By failing to comply with the TSR, Defendants have violated their common law and statutory obligations of good faith and fair dealing of Wis. Stat. § 421.108.

203. By failing to comply with the TSR, Defendants have violated their common statutory obligations of engaging in unfair and deceptive trade practices under Wis. Stat. § 100.20.

204. Global knew or should have known of Defendants' scheme and the violations of the TSR.

205. Global knew and assisted Defendants in collecting illegal fees from the Global Dedicated Account before settlements had occurred in violations of the TSR regarding debt settlement.

206. The amended TSR also prohibits the making of false or unsubstantiated claims about the services being provided.

207. Global knew or should have known that the Defendants were making false or unsubstantiated claims about its services and yet continued to provide them the financial services needed to continue bilking consumers out of millions of dollars.

208. It is a violation of the TSR to substantially assist a seller or telemarketer while knowing, or consciously avoiding knowing, that the seller or telemarketer is violating the TSR.

209. Global, therefore violated the TSR by assisting and facilitating the TSR violations.

210. By failing to comply with the TSR, Defendants Global have violated their common law and statutory obligations of good faith and fair dealing of Wis. Stat. § 421.108.

211. By failing to comply with the TSR, Defendants have violated their common statutory obligations of engaging in unfair and deceptive trade practices under Wis. Stat. § 100.20.

212. By failing to comply with the CROA, Defendants violated their common statutory obligations of engaging in unfair and deceptive trade practices under Wis. Stat. § 100.20.

213. By failing to comply with the licensing requirements of Wis. Stat. §218.02, the WCA, and other consumer protection statutes, all Defendants violated Wis. Stat. § 100.20 by engaging in unfair and deceptive trade practices.

214. Ms. Cich suffered actual damages as previously outlined.

215. Defendants are jointly and severally liable to Ms. Cich.

**WHEREFORE**, Plaintiff prays that this Court enters judgment in her favor and against Defendants, jointly and severally, for the following, plus reasonable attorney's fees and costs:

a. Actual damages, including emotional and financial and consequential damages more than $50,000.00;

b. Punitive damages;

c. Attorney's fees and costs; and

d. Such other and further relief as this Court deems just and proper.

**Tenth Claim for Relief - Declaratory Judgment**

216. Ms. Cich realleges and incorporates by reference the allegations of the preceding paragraphs.

217. The contracts with Defendants Credit Associates and Global are for an illegal purpose and are void and unenforceable.

218. The contracts were never consummated because there were prerequisites for a valid and enforceable contract that were never met.

219. The contracts have been rescinded and are void ab initio.

220. Ms. Cich is entitled to a declaratory judgment that the contracts are void and unenforceable for any and all reasons as set forth above.

**WHEREFORE**, Plaintiff prays that this Court enters judgment in her favor and against Defendants, jointly and severally, declaring the contracts to be void and unenforceable.

**Plaintiff demands that this case be heard by a jury.**

Dated: October 5, 2026

*Electronically Signed by Angel Rose Kwaterski*
Angel R. Kwaterski
State Bar No. 1104811
Legal Action of Wisconsin, Inc.
300 Ohio Street
Oshkosh, WI 54902
920-233-6521
ark@legalaction.org